**580**

MacPherson-Sanford Trust, Sherley MacPherson, Trustee, et al.,[1] Petitioners *v.* Commissioner of Internal Revenue, Respondent

Docket No. 65872.    Filed June 30, 1969.

*Louis Bender*, for Henry C. Clark.

*William T. Holloran* and *Jay Hamelburg*, for the respondent.

---

[1] This opinion also controls disposition of similar motions to disqualify Henry C. Clark in numerous Holdeen trust cases now pending in the Tax Court.

584

The allegations in respondent's motion to disqualify are, in sum-
mary, a recital of Clark's employment in Regional Counsel's Office
from 1948 until March 31, 1962, that Clark participated in the injunc-
tion proceedings and refund actions instituted by Jonathan Holdeen,
that he attended conferences in which both the Holdeen individual and
Holdeen trust cases were discussed, that he wrote a letter pertinent to
a deficiency notice issued to one of the trusts, and that because of the
identity and similarity of the facts and issues involved in the trust
cases to those involved in the injunction and refund proceedings, the
representation by Clark of the trusts in these proceedings would be
contrary to canons 6, 36, and 37 of the Canons of Professional Ethics
and would thus violate Rule 2 of the Tax Court Rules of Practice.
Paragraph 8 of the motion reads:

> The identity and similarity of the facts and issues in the instant cases involv-
> ing the subject petitioners with the facts and issues in that aforementioned
> refund and injunction proceedings brought by Jonathan Holdeen are so inter-
> related as to require the prohibition of Henry C. Clark from acting as counsel
> for the petitioners.

In this motion respondent does not rely on 18 U.S.C. sec. 207(a),[3]
which is a criminal statute, nor on his own circular 230,[4] which estab-
lishes the rules whereby former employees of the Government may
represent taxpayers before the Internal Revenue Service, but relies
entirely on the charge that for Clark to represent the Holdeen trusts
in this Court would violate Rule 2, Rules of Practice, Tax Court of
the United States, because to do so would be contrary to canons 6, 36,
and 37 of the Canons of Professional Ethics of the American Bar
Association. We think this is appropriate because it is doubtful that

---

[3] Sec. 207. Disqualification of former officers and employees in matters connected with
former duties or official responsibilities; disqualification of partners

(a) Whoever, having been an officer or employee of the executive branch of the United
States Government, of any independent agency of the United States, or of the District of
Columbia, including a special Government employee, after his employment has ceased,
knowingly acts as agent or attorney for anyone other than the United States in connection
with any judicial or other proceeding, application, request for a ruling or other determina-
tion, contract, claim, controversy, charge, accusation, arrest, or other particular matter
involving a specific party or parties in which the United States is a party or has a direct
and substantial interest and in which he participated personally and substantially as an
officer or employee, through decision, approval, disapproval, recommendation, the rendering
of advice, investigation, or otherwise, while so employed, or

\*        \*        \*        \*        \*        \*        \*

Shall be fined not more than $10,000 or imprisoned \* \* \*

[4] Sec. 10.33. *Practice by Former Internal Revenue Service Employees.—*

(a) *Matters pending while employed.*—No former officer or employee of the Internal
Revenue Service, shall, within two years after the termination of his Internal Revenue
employment, practice or in any manner act as attorney or agent or as the employee of an
attorney or agent in any matter which was pending in the Internal Revenue Service during
the period of his employment therein, unless he shall first obtain the written consent of the
Director of Practice. This consent will not be granted unless it appears that the applicant,
as an officer or employee of the Internal Revenue Service, did not give personal consideration
to the matter or gain knowledge of the facts of it during and by reason of his employment in
the Internal Revenue Service. [Former 31 C.F.R. sec. 10.33.]

circular 230 would be binding on this Court and this Court has no criminal jurisdiction which would permit it to proceed under 18 U.S.C. sec. 207.

Rule 2, Tax Court Rules, provides in part: "Practitioners before this Court shall carry on their practice in accordance with the letter and spirit of the canons of professional ethics of the American Bar Association." Rule 2 also provides that this Court may deny admission to, suspend, or disbar any person who in its judgment is lacking in proper professional conduct. We do not believe there can be any question that this Court has the power and authority to determine whether a person is qualified to represent a party in a proceeding before this Court, and has jurisdiction to hear and rule on this motion to disqualify based on the alleged violation of the Rules of this Court and the Canons of Professional Ethics.

Canons 6, 36, and 37, which are quoted in part in footnote 2, *supra*, in substance, forbid an attorney from accepting employment in matters adversely affecting any interest of a former client with respect to which confidence has been reposed, forbid a former Government attorney from accepting employment after retirement from Government service in connection with any matter which he had investigated or passed upon while in such employment, make it the duty of lawyers to preserve their clients' confidences and forbid an attorney and his employees from accepting employment which involves or may involve the disclosure of confidences. One of the principal reasons for these rules is to assure clients that they may reveal confidences to their attorneys without fear that the attorneys may later use those confidences to the disadvantage of the former clients. *United States* v. *Standard Oil Co.*, 136 F. Supp. 345.

Under the canons of ethics an attorney must avoid not only actual wrongdoing but also the appearance of wrongdoing. Because of this, certain inferences that confidential information was obtained from the former client have been read into the interpretation of these canons to avoid forcing the former client to reveal the confidences in order to prove the conflict of interest. However, to activate these inferences, it must be shown that there is a substantial relationship between the subject matter of the lawsuit and the matters in which the attorney represented the former client. In applying these rules to former Government attorneys, however, the proof of substantial relationship must, perforce, be more specific and direct, because the Government is involved in so many things that to utilize inferences of access to confidential information within the entire Government or even within one department just because an attorney was formerly employed by the Government or that department would be unrealistic and impractical. Thus it is necessary to identify with more certainty the particular subject matter with respect to which the former Gov-

ernment attorney may have acquired, or had access to, confidential information before he should be disqualified from representing a private individual in an action against the Government. *United States* v. *Trafficante*, 328 F. 2d 117; *United States* v. *Standard Oil Co., supra.* Recognition of this distinction appears to be made in canon 36, which is concerned specifically with former Government attorneys and forbids them from accepting employment only "in connection with any matter which he has *investigated* or *passed upon* while in such office or employ." (Emphasis supplied.) While canons 6 and 37 still apply to a former Government attorney, canon 36 makes it apparent that a more practical test must be used in determining whether a former Government attorney would be violating his duty to his former client by representing an individual person in an action against the Government.

Respondent appears to recognize the above requirement here because he has made a determined effort to show that Clark actually dealt with these trust cases while employed in Regional Counsel's Office.

It is our conclusion that respondent has failed to prove that Clark should be disqualified from appearing as attorney in these proceedings.[5] The evidence fails to convince us that Clark's duties and activities while serving in Regional Counsel's Office were sufficiently related to the issues involved in these trust cases, or that he acquired such knowledge of the trust cases, to require his disqualification from representing the trusts in these proceedings, particularly under the circumstances that existed when this motion was filed. In this respect, our views coincide with those expressed by the officials in Regional Counsel's Office in the letters quoted above. There is no satisfactory explanation of why these officials changed their views or why their rulings were reversed.

A number of witnesses, including most of the Internal Revenue Service attorneys and the revenue agents who were involved in the cases, described in detail the course of the cases in the Service and the U.S. District Courts. Respondent produced at the trial more than 100 office documents from his files showing the various actions taken.

It is fair to say, in summary of this mass of evidence, that Clark's chief duty and concern in the Holdeen cases was the collection of the taxes that had been assessed against Holdeen, individually, and that he had no part in the determination of or consideration of the tax liabilities of the trusts. Inevitably, in the long-drawn-out consideration of the various cases, there was some crossing over of the functions of the different sections in Regional Counsel's Office. However, the trusts were never involved in the refund and injunction proceedings.

---

[5] Respondent agrees with petitioner that his motion to disqualify Clark is one in which he bears the burden of proof. However, we have reached our conclusion on consideration of the record as a whole without reliance on the burden of proof.

Not only are the trusts different taxable entities from Holdeen but the issues in the trust cases are entirely different from the issues in the Holdeen individual cases. Undoubtedly, Clark familiarized himself with the terms of at least some of the trust documents, because it was necessary to know the provisions thereof in order to support the Government's claim that the income of the trusts was taxable to Holdeen, but he was also aware of the fact that the Government's claim of taxes against the trusts was alternative to and inconsistent with the claim that the trust income was taxable to Holdeen. There is no evidence that Clark had anything to do with the formulation of the Government's theory for taxing the trusts or with the processing and prosecuting of the trust cases.

Most of the witnesses for respondent and for petitioners were in substantial agreement on the more important facts. Much of their testimony was given from their memory of events which took place more than 10 years ago. Perhaps the greatest variance in the testimony of the witnesses lies in that of one of respondent's principal witnesses, John B. Minnick, to whom the individual Holdeen cases were assigned in the refund litigation section of the Chief Counsel's Office in Washington, and Clark himself. It appears to be Minnick who initiated the disqualification action against Clark and who was originally responsible for the irreconcilable position taken by respondent in the matter. In these circumstances we can reasonably assume that each of these witnesses was something less than totally unbiased and that his recollection of prior events may have been somewhat colored by motives of self-interest or self-vindication.

We can find no evidence of any confidences of the Government that Clark gained or may have gained through his employment with the Government that he might use to the disadvantage of the Government in these proceedings. The fact is that, to all appearances, there were no confidences involved in any of the cases. So far as we have been able to ascertain, there has never been any concealment or repression of the facts by either the Government or the taxpayers. The cases are not of the type generally found to elicit confidences. The issues involved are straightforward questions of how the tax laws apply to undisputed facts, such as whether the Holdeens individually and the several trusts are separate taxable entities, whether the trusts are valid trusts, and whether the income of the trust was irrevocably set aside for charities.

Furthermore, about 1 year before this motion to disqualify was filed, Clark had been specifically authorized to represent the trusts in these proceedings by an official of the Government whom he had every reason to believe he could rely on, and it seems that if the Government had any confidences with respect to these matters they would have been revealed to Clark during the period of about 1 year in which

he was specifically authorized to represent the trusts and in the course of which he was most instrumental in working out a proposed package settlement of all of the Holdeen individual and trust cases. While Clark does not rely on laches on the part of the Government, it seems a little late for the Government to claim as unethical conduct on the part of Clark that which it had encouraged and in which it had participated.

Respondent does not claim, nor did he offer any evidence, that he will suffer any actual disadvantage if Clark is permitted to represent the trusts in these cases; respondent claims this is irrelevant. This may be true in the usual situation, but this is not the usual situation and we cannot close our eyes to the real circumstances in order to permit the Government to prove a theory. This Court is more concerned at this time with the final disposition of the litigation than it is with the alleged theoretical unethical conduct of Clark which we cannot find has been proved.

While the provisions of circular 230 would not be binding on this Court and we certainly have no intention of interpreting or applying that regulation in this proceeding, it does appear from a cursory reading of that regulation that it would not be a violation of those provisions for Clark to represent these trusts before the Internal Revenue Service.

Respondent relies primarily on *United States* v. *Trafficante, supra,* in which an attorney who had handled income tax claims against the taxpayers while employed as an attorney in the Office of Regional Counsel in Jacksonville, Fla., was held disqualified from representing taxpayers in a suit brought against them by the Government for the collection of the various tax deficiencies which had been agreed upon and reflected in a stipulated decision entered by the Tax Court. The Court of Appeals for the Fifth Circuit held, reversing the lower court, that the attorney's representation of the taxpayers under those circumstances would be in violation of the provisions of canons 6, 36, and 37 of the Canons of Professional Ethics. The court there said (pp. 119–120):

The test is not, as appellees urge, whether the attorney represented the adverse party, here the United States, with respect to the specific issues in the pending litigation. * * * [Cits. omitted.] The prohibition of Canon 36 is against acceptance of employment "in connection with any matter which he has investigated or passed upon while in such. [public] office or employ." The collection of a tax is "in connection with" the determination or assessment of the tax. * * * The statutory interdiction includes acting adversely to the United States in connection with a claim of the United States in which the attorney participated personally and substantially.

We think the case at bar is factually distinguishable from the *Trafficante* case. We cannot find from the evidence presented in this case that Clark's representation of the trusts herein would be adverse to

the claim of the Government against Holdeen individually, which is the claim in which Clark participated while an employee of the Government. We do not find that Clark participated "personally and substantially" or that he "investigated or passed upon" the Government's claim against the Holdeen trusts. See *Uniweld Products, Inc.* v. *Union Carbide Corp.*, 385 F. 2d 992, in which the Court of Appeals for the Fifth Circuit refused to disqualify an attorney because the moving party failed to prove similarity of issues and facts involved in the principal proceeding and those with which the attorney may have become familiar in his prior representation of the movant. See also *Fleischer* v. *A.A.P., Inc.*, 163 F. Supp. 548; and *United States* v. *Standard Oil Co., supra.*

In our reliance on the fact that Clark did not personally participate in the determination and assessment of any of the deficiencies against the trust, we do not intend to favor compliance with the "letter" over compliance with the "spirit" of the Canons of Professional Ethics. It should be noted that the Tax Court rule requires both. A self-imposed disqualification from representing petitioners in any of the Holdeen cases, whether those of the trust or the individuals, may have been a commendable course for Clark to take. Yet we cannot say within our judicial prerogatives that he was required to do so.

It is our determination that the evidence of record fails to support respondent's motion to disqualify Clark. Accordingly, an order will be issued denying the motion. We hope that this action will lead to a long overdue disposition of these cases, either by settlement or trial, all discussions concerning which have been suspended for about 3 years as a result of this proceeding. We are confident that Clark's participation in the disposition of the Holdeen cases will in no way be prejudicial to the United States.

*An appropriate order will be entered.*